T.C. Summary Opinion 2006-56


UNITED STATES TAX COURT



NORMA K. LITTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16080-05S.          Filed April 19, 2006.



Norma K. Litton, pro se.

<u>Catherine S. Tyson</u>, for respondent.



ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

_____

    [1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 2003, the taxable year in issue.

Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 2003 in the amount of $2,117.

The issues for decision are:

(1) Whether petitioner is entitled to dependency exemption deductions for her son and daughter. We hold that she is.

(2) Whether petitioner is entitled to the child tax credit in respect of her children. We hold that she is.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time that the petition was filed, petitioner resided in Leander, Texas.

Petitioner and Gregory Lee Litton (Mr. Litton) were married in 1986. The couple have two children, a son, who was born in 1992, and a daughter, who was born in 1995.

In March 1997, petitioner and Mr. Litton were divorced pursuant to a decree entered by the district court of Williamson County, Texas. The divorce decree listed Mr. Litton's residence as the "present address" of each of the parties' children. The divorce decree made no provision with respect to dependency exemption deductions for the children.

The divorce decree named petitioner and Mr. Litton as "Joint Managing Conservators" of the parties' children, but it provided

that Mr. Litton "shall have the exclusive right to determine the residence and domicile of the children."  The divorce decree also provided that Mr. Litton "shall have possession of the children at all times not specifically awarded in this decree to NORMA KAY CASEY LITTON [petitioner], or otherwise mutually agreed by the parties."

In a Standard Possession Order, which was incorporated in the divorce decree, the district court set forth detailed guidelines regarding "possession" of the children.  In particular, the Standard Possession Order provided that petitioner "shall have possession of the child at any and all times mutually agreed to in advance by the parties, and, failing mutual agreement," shall have the right to possession of the children, in pertinent part, as follows:[2]

> Weekends.  On weekends, beginning at 6:00 P.M. on the first, third, and fifth Friday of each month and ending at 6:00 P.M. on the following Sunday.

> Weekend Possession Extended by a School Holiday. Except as otherwise explicitly provided in this Standard Possession Order, if a weekend period of

---

[2]  The Standard Possession Order also provided very specific guidelines regulating custody on a child's birthday, Mother's Day, Father's Day, Thanksgiving, Christmas holidays, and so on and so forth.  At trial, petitioner and Mr. Litton focused almost exclusively, if not exclusively, on the weekend and Tuesday/Thursday provisions of the Standard Possession Order.  On the basis of the parties' focus at trial, and judging from petitioner's day-planner, see infra, it would appear that they generally treated just the weekend and Tuesday/Thursday provisions as the operative provisions regarding which parent was entitled to "possession" of the children at any particular time.

possession by Joint Managing Conservator, NORMA KAY CASEY LITTON, begins on a Friday that is a school holiday during the regular school term or a federal, state, or local holiday during the summer months when school is not in session, or if the period ends on or is immediately followed by a Monday that is such a holiday, that weekend period of possession shall begin at 6:00 P.M. on the Thursday immediately preceding the Friday school holiday or end at 6:00 P.M. on that Monday holiday or school holiday, as applicable.

Tuesday and Thursday. On Tuesday and Thursday of each week during the regular school term, beginning at 6:00 P.M., and ending at 8:00 A.M. the following morning.

Generally speaking, petitioner and Mr. Litton faithfully observed the terms of the Standard Possession Order during 2003. Petitioner and Mr. Litton, however, each strove to accommodate the other's reasonable requests, and they often deviated from the terms of that order upon their mutual agreement. More specifically, the parties frequently agreed to allow the children to spend Sunday night at petitioner's home for such weekends that petitioner had custody of the children.[3]

---

[3] Mr. Litton testified:

Usually, if they spent the night it was for a birthday, * * * or there may have been some other such goings on. Maybe they had traveled to see their grandmother. There was some sort of activity that they were doing on a Sunday, which would not have them back in a reasonable amount of time. And I am not the kind of person who would say, you know, you have to be here at 6:00 for me to pick you up. And so what would happen would be is, they would come back later after 6:00 in the evening, and they could spend the night. It is not an issue for me to have them spend the night there.

The Standard Possession Order was in effect during the 2003 calendar year. Petitioner and Mr. Litton together provided more than half of the support for the children in 2003, and the children were in the custody of both parents for more than half of the year.

Petitioner timely filed a Federal income tax return (Form 1040) for 2003. On her return, petitioner claimed dependency exemption deductions for her two children and the child tax credit.

In the notice of deficiency, respondent disallowed the dependency exemption deductions "since another taxpayer has also claimed this dependent on their tax return."[4] Respondent also disallowed the child tax credit on the ground that petitioner was not entitled to claim the children as dependents.

## Discussion[5]

A. Dependency Exemption Deduction

In general, a taxpayer may deduct an exemption for a dependent, such as a taxpayer's child, over half of whose support is provided by the taxpayer. Secs. 151(a), (c)(1), 152(a). An

_____

[4] At trial, Mr. Litton testified that he claimed dependency exemption deductions for his son and daughter on his 2003 return. The record suggests that respondent did not challenge those deductions.

[5] We decide this case on the basis of the evidence in the record without regard to the burden of proof. Accordingly, we need not decide whether the general rule of sec. 7491(a)(1) is applicable. See Higbee v. Commissioner, 116 T.C. 438 (2001).

individual cannot be a dependent of more than one taxpayer. See sec. 151(d)(2).

In the case of a child of divorced parents, if a child receives over half of his support during the year from both his parents and is in custody of one or both parents for more than half of the year, then the child shall be treated as receiving over half of his support during the year from the parent having custody for a greater portion of the year.[6] Sec. 152(e)(1). That parent is referred to as the "custodial parent". Id. In the event of so-called split or joint custody, "'custody' will be deemed to be with the parent who, as between both parents, has the physical custody of the child for the greater portion of the calendar year." Sec. 1.152-4(b), Income Tax Regs.

Petitioner contends that she is the custodial parent because the children were in her custody for more than half of the year. In contrast, respondent contends that Mr. Litton is the custodial parent because the children were in his custody for more than half of the year. The resolution of this issue therefore turns

---

[6] The exceptions to the general rule of sec. 152(e)(1) do not apply to the facts of this case. For example, sec. 152(e)(2) allows the noncustodial parent to claim the dependency exemption deduction for a child if the custodial parent signs a written declaration, or Form 8332, Release of Claim to Exemption for Child of Divorced or Separated Parents, releasing his or her claim to the deduction, and the noncustodial parent attaches the declaration or Form 8332 to his or her tax return. In at least 1 year, which is not before the Court, Mr. Litton had signed a Form 8332.

on whether petitioner had physical custody of the children for the greater portion of 2003. See McCullar v. Commissioner, T.C. Memo. 2003-272; sec. 1.152-4(b), Income Tax Regs.

In support of her contention, petitioner relies on her day-planner that was introduced into evidence. In the day-planner, petitioner placed a "K" (for "kids") on each day that she had custody of the children and then numbered each such mark sequentially. The day-planner contained 195 "K" marks.[7] Petitioner therefore asserts that she had physical custody of the children for 195 days in 2003, which is more than half of the year.

At the center of this dispute is how petitioner and Mr. Litton quantified the time that the children spent with petitioner. In particular, how the parties quantified the Sunday of the first, third, and fifth weekend. Petitioner quantified physical custody in terms of "days" that the children were in her physical custody; that is, Tuesday, Thursday, and the first, third, and fifth Friday, Saturday, and Sunday weekend. Although petitioner and Mr. Litton dispute whether the children spent the

---

[7] At trial, petitioner testified that she had custody of the children for "193 days" in 2003. In contrast, she wrote "196 days" in the margin of the day-planner as the total number of custody days for 2003. We regard the inconsistences among her custody totals as insignificant. After close inspection of the day-planner, although it appears that petitioner miscounted one day (i.e., Nov. 14 was marked as day 165 and Nov. 15 was marked as day 167), there were a total of 195 "K" marks in the day-planner.

respective Sunday night at her home, petitioner counted Sunday as a full day that the children were in her physical custody. Therefore, according to petitioner, the children spent 195 days in her physical custody.

There is no statutory yardstick to quantify physical custody "for a greater portion" of the year, but such a yardstick is determined by the facts of each individual case. In the present case, the Standard Possession Order awarded petitioner physical custody during the regular school term every Tuesday and Thursday beginning at 6 p.m. and ending at 8 a.m. the following morning. With respect to the weekends, the Standard Possession Order awarded petitioner custody beginning at 6 p.m. on the first, third, and fifth Friday of each month and ending at 6 p.m. on the following Sunday. If Monday was a school holiday, petitioner's custody would end at 6 p.m. on that Monday. In light of the fact that the Standard Possession Order awarded physical custody to each parent on the basis of an overnight stay, we find it appropriate in this case to quantify physical custody on the number of nights that the children spent with each parent.

We found petitioner's testimony at trial to be straight-forward and credible, and she impressed us as a sincere and conscientious taxpayer. Moreover, we found that petitioner diligently documented the time that she had physical custody of the children in her day-planner, which she maintained on an

accurately contemporaneous basis.  Petitioner testified with specificity as to the time that the children spent with her, and Mr. Litton acknowledged that he and petitioner often mutually agreed to deviate from the beginning and ending times set forth in the Standard Possession Order.

Petitioner and Mr. Litton do not dispute that the children spent the night at petitioner's home on Tuesdays, Thursdays, and the respective Fridays and Saturdays, as well as on other days mutually agreed upon between the parties.[8]  With respect to the designated Sundays, the Standard Possession Order awarded petitioner physical custody of the children until 6 p.m.  It follows therefrom that the children would have spent the night at Mr. Litton's home on Sunday unless the parties mutually agreed that the children would spent the night at petitioner's home.  Indeed, it is apparent from the record that the parties frequently agreed to allow the children to spend Sunday night with petitioner when she had custody of them during the weekend.

Petitioner asserts that the children spent the night at her home for most, or for more than half, of the Sundays that she had physical custody of them for the weekend.  Mr. Litton acknowledged that the children spent the night at petitioner's home on Sunday for at least one-third of the time that she had

---

[8]  It appears that petitioner's log contained notations for such occasions, which were included in petitioner's computation.

physical custody of them for the weekend.  Furthermore, Mr. Litton testified that during the summer and other breaks when the children did not have school on Monday, the children frequently spent Sunday night with petitioner.

The record establishes that the children spent 167 non-Sunday nights with petitioner and sufficiently more than half of the 28 Sunday nights for such weekends that petitioner had physical custody of them to constitute more than half of the 365 nights of the year.  On balance, and in light of the facts and circumstances of this case, we conclude that the children spent more than 50 percent of the time with petitioner.  Therefore, we hold under section 152(e)(1) that petitioner had physical custody of the children for the greater portion of 2003.  Accordingly, petitioner is entitled to dependency exemption deductions for her son and daughter in the taxable year 2003.[9]  Respondent's determination on this issue is not sustained.

---

[9] At trial, petitioner and Mr. Litton appeared to have a civil relationship, and they seemed to cooperate well in respect to deviating from the Standard Possession Order in the best interests of the children.  For future years, the parties appeared to entertain the notion of properly completing and executing a Form 8332 releasing one's claim to the dependency exemptions and perhaps to alternate every year, or to split the dependency exemption deductions evenly between each parent each year.  If the respective party were to attach such form to his or her return, then, at least for the taxable year or years subject to such form, the parties might succeed in avoiding the issues that have arisen in the present case.  Otherwise, we foresee that respondent may disallow the dependency exemption deductions to both petitioner and Mr. Litton and require both of them to file petitions in this Court for a determination of who had custody for the greater portion of a particular taxable year.

B. <u>Child Tax Credit</u>

Section 24(a) provides that a taxpayer may claim a credit for "each qualifying child". A qualifying child is defined, inter alia, as any individual if "the taxpayer is allowed a deduction under section 151 with respect to such individual for the taxable year". Sec. 24(c)(1)(A). For the reasons stated above, petitioner may claim dependency exemption deductions for her son and daughter under section 151, and, therefore, she may claim a child tax credit. Respondent's determination on this issue is not sustained.

C. <u>Conclusion</u>

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered for petitioner</u>.